Filed 5/23/25  In re C.R. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re C.R.,<br><br>a Person Coming Under the Juvenile Court Law. | B336708<br><br>(Los Angeles County<br> Super. Ct. No. 23CCJP03263A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>E.R.,<br><br>      Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Jean M. Nelson, Judge.  Affirmed.

Zaragoza Law Office and Gina Zaragoza, by appointment of the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Courtney Fisher, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Father appeals the jurisdictional findings made against him by the juvenile court under Welfare and Institutions Code section 300,[1] arguing they are not supported by substantial evidence. Father also challenges the juvenile court's dispositional order removing his child from his care.[2] We conclude that father's contentions are without merit and affirm the juvenile court's jurisdictional findings and removal order.

As the parties are familiar with the facts and procedural history of the case, we do not restate those details in full here. Below, we discuss only the facts and history as needed to resolve and provide context for the issues presented on appeal.

## RELEVANT BACKGROUND

E.R. (father) and N.S. (mother) have one child together, Chloe.[3] The family resided together in Mexicali, Mexico, until December 2022, when mother took Chloe to the United States. Father remained in Mexico, while Chloe and her mother began living with Chloe's maternal grandmother in Los Angeles.

On September 25, 2023, the Los Angeles County Department of Children and Family Services (Department) filed a section 300 petition

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2] Mother is not a party to this appeal and has not appealed the jurisdictional findings or dispositional orders made against her by the juvenile court below.

[3] Chloe was seven years old at all relevant points in the proceedings below.

alleging two counts against mother under section 300, subdivision (b).  No counts were alleged against father.  On September 21, 2023, the juvenile court detained Chloe from mother and placed her in father's custody.  As father did not have a visa to travel to the United States, he agreed to have Chloe reside with her maternal grandmother.

As the Department investigated the allegations against mother, Chloe informed a Department social worker that she had witnessed several incidents of verbal disputes and domestic violence between mother and father.  Chloe recounted one specific incident where she tried to hug her mother during one of her parents' fights, which caused father to accidentally strike Chloe in the back.  Chloe described it as a "hard" hit and said she was "a little purple after."  Chloe also recalled another time where father grabbed mother by the wrists and mother started crying.  Chloe said father would sometimes push and hurt her mother, and that her parents sometimes screamed at each other.  Chloe told the Department that she did not want to live with father because of his history of violent conduct with mother.

Mother confirmed that she had a history of domestic violence with father, suggesting she was sometimes the aggressor and was "not a victim either."  She recounted an incident when father repeatedly punched her  in the face in Chloe's presence.  Chloe was four or five years old at the time.  Mother also said there was another incident in which father put a knife to mother's neck.

Father similarly admitted to a history of domestic violence with mother.  Father mentioned an incident where he and mother both hit each other, but said he tried to make sure Chloe did not witness it.  He said mother initiated a verbal altercation with him in Chloe's presence.  He also admitted to a separate incident in 2021 where he pushed mother "one time,"

3

which caused a bruise behind mother's ear. He recounted another physical altercation in 2021 in which mother verbally insulted him and he "responded with a fist. On her body and face. Multiple times." Father said Chloe was asleep during the incident and that he tried to make sure Chloe never witnessed any of their altercations. Father claimed Chloe was lying when she reported that father had struck her and suggested she was being coached by maternal relatives.

One of Chloe's maternal aunts reported that she spent three weeks in Mexicali in 2022 and stayed in the family home. Chloe's aunt reported that parents "would fight and scream at each other sometimes. They said bad words." She was with Chloe during one of these verbal altercations and reported that Chloe cried because she did not like hearing her parents fight.

Other maternal relatives reported to the Department that mother had previously told them about incidents of domestic violence with father.

In response, the Department filed an amended section 300 petition, adding two counts against both parents. The amended petition added count a-1 under section 300, subdivision (a), alleging the parents had a history of engaging in verbal and physical altercations while in Chloe's presence, which placed Chloe at risk of serious harm. These same factual allegations formed the basis for the newly added count b-3 alleged against both parents under subdivision (b).

At the detention hearing, the juvenile court removed Chloe from father's care, finding the domestic violence allegations were recent and significant enough to make a prima facie case for detention. The court also ordered the Department to work with authorities "in Mexico to refer Father to a domestic violence program."

4

At the January 2024 jurisdiction hearing, father's counsel admitted the history of domestic violence but disputed Chloe's report that father had struck her in the back.  Father's counsel claimed instead that Chloe was "in another room during the incident."  The juvenile court sustained counts a-1 and b-3 against mother and father.  The juvenile court found that while Chloe was "very young, she is credible in that she describes the fights with detail and her own injuries as a result."  The court also noted that while mother and father live in different countries, mother had previously traveled back to Mexico.  The juvenile court expressed concern that "Until father learns to deal with his own anger and frustration in a relationship, it is likely he will have domestic violence in the next relationship.  And he is not fully admitting his role here, which means it is likely to happen again."

At the disposition hearing, father's counsel argued for Chloe to be placed with father, noting he was on the waiting list for a 25-session domestic violence class.  The juvenile court removed Chloe from both parents.  While the court was "impressed" with father's efforts to participate in a domestic violence course in Mexico, it noted that "although the parents appear not to be together, I don't know if that is simply because father has moved out of the country, and I don't know if he will come back in."  The juvenile court expressed concern that "father may have another partner and may repeat the domestic violence problems because they do tend to repeat in relationships."  The court acknowledged Chloe had been bruised during one of her parents' domestic violence incidents, concluding that "the risk is pretty serious here, and I need father to go through domestic violence classes so that he can understand himself and change himself and not react physically when frustrated by a partner.  That will happen again in his next relationship if he doesn't work on himself.  I'm optimistic he can do that."  The court also noted

5

father had only recently begun to receive services and "needs to make more progress."

On appeal, father challenges the juvenile court's jurisdictional findings against him on counts a-1 and b-3, as well as the dispositional order removing Chloe from his care.

## DISCUSSION

I. *Jurisdictional Findings*

At the jurisdictional stage, the juvenile court must determine by a preponderance of the evidence if a child is described by section 300. (§ 355, subd. (a); *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 248.) The juvenile court here asserted jurisdiction under section 300, subdivisions (a) and (b)(1).

### A. *Legal Standards*

A finding under section 300, subdivision (a), requires evidence of a risk of physical injury "inflicted nonaccidentally upon the child." (§ 300, subd. (a).) "Under certain circumstances incidents of domestic violence between a child's parents, if they occur in the child's immediate presence, may support a jurisdiction finding under section 300, subdivision (a). [Citation.] For example, if a father strikes an infant's mother while she is holding the child or an older child intervenes during a fight to protect her mother from her father's abuse, the risk of harm to the child may be properly viewed as nonaccidental. [Citation.]" (*In re Cole L.* (2021) 70 Cal.App.5th 591, 603.)

Section 300, subdivision (b)(1), allows a juvenile court to exercise jurisdiction over a child if the "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of

6

. . . [¶] [t]he failure or inability of [his or her] parent . . . to adequately supervise or protect the child." Subdivision (b)(1) requires only that a parent has failed or is unable to adequately supervise or protect the child. The statute does not require negligent or culpable conduct by the parent. (*In re R.T.* (2017) 3 Cal.5th 622, 629–630 (*R.T.*).)

To show the child faces a risk of harm at the time of the jurisdiction hearing, there "must be some reason beyond mere speculation to believe the alleged conduct will recur." (*In re James R.* (2009) 176 Cal.App.4th 129, 136.) "While substantial evidence may consist of inferences, such inferences must be 'a product of logic and reason' and 'must rest on the evidence' [citation]; inferences that are the result of mere speculation or conjecture cannot support a finding [citations]." (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633.)

However, "[t]he juvenile court need not wait until a child is seriously injured to assume jurisdiction if there is evidence that the child is at risk of future harm from the parent's . . . conduct." (*In re Yolanda L.* (2017) 7 Cal.App.5th 987, 993.) The court may consider past events as an indicator of whether the child faces a current risk of harm because "[a] parent's past conduct is a good predictor of future behavior." (*In re T.V.* (2013) 217 Cal.App.4th 126, 133.) Similarly, a parent's denial of wrongdoing or failure to recognize the negative impact of their conduct is also relevant to determining risk under section 300. (*In re A.F.* (2016) 3 Cal.App.5th 283, 293 (*A.F.*).)

We review a juvenile court's jurisdiction findings for substantial evidence. (*In re E.E.* (2020) 49 Cal.App.5th 195, 206.) We will affirm the findings if they are supported by evidence that is reasonable, credible, and of solid value. (*In re R.V.* (2012) 208 Cal.App.4th 837, 843.) We review the

7

record in the light most favorable to the court's findings and draw all reasonable inferences from the evidence in favor of those findings. (*R.T., supra*, 3 Cal.5th at p. 633.) "Evidence from a single witness, even a party, can be sufficient to support the trial court's findings." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)

B.      *Section 300, subdivision (b)*

"[D]omestic violence in the same household where children are living . . . is a failure to protect [the children] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 194; see also *In re S. O.* (2002) 103 Cal.App.4th 453, 460–461 ["'domestic violence in the same household where children are living *is* neglect; it is a failure to protect [them] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it'"]; *In re T.V., supra,* 217 Cal.App.4th at p. 135.)

"Both common sense and expert opinion indicate spousal abuse is detrimental to children." (*In re Benjamin D.* (1991) 227 Cal.App.3d 1464, 1470, fn. 5.) Children can be "put in a position of physical danger from [spousal] violence" because, "for example, they could wander into the room where it was occurring and be accidentally hit by a thrown object, by a fist, arm, foot or leg." (*In re Heather A., supra*, 52 Cal.App.4th at p. 194.) "'Studies show that violence by one parent against another harms children even if they do not witness it.'" (*In re E.B.* (2010) 184 Cal.App.4th 568, 576.) Past violent behavior is the best predictor of future violence. (*Ibid.*; accord *In re L.O.* (2021) 67 Cal.App.5th 227, 238.)

There is substantial evidence in the record supporting the juvenile court's jurisdictional finding against father on count b-3 of the amended petition. Mother and father had an extensive and uncontested history of domestic violence, including repeated verbal and physical altercations in Chloe's presence. On one occasion, this conduct resulted in direct, physical injury to Chloe when father struck her while engaged in a physical altercation with mother. There was also evidence before the court showing that witnessing parents' fighting had emotional consequences for Chloe. The record contains eyewitness testimony that Chloe cried when she heard her parents fight, even while not in the room with them. Chloe also told the Department that she did not want to live with father because of his history of domestic violence with mother. Though father was willing to participate in domestic violence courses, at the time of the jurisdictional hearing, he had not yet begun those courses.

"[D]enial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision." (*In re Esmeralda B.* (1992) 11 Cal.App.4th 1036, 1044; accord *A.F.*, *supra*, 3 Cal.App.5th at p. 293.) While father admitted he engaged in repeated acts of physical violence against mother, he downplayed the detrimental effect this had on Chloe, claiming she was never physically injured by the parents' fighting.[4] He also claimed he made sure Chloe was not present for those

---

[4] Father continues this pattern on appeal, claiming Chloe "did not suffer serious physical harm resulting from disputes between [father] and [mother]." The evidence in the record shows Chloe suffered both direct physical harm and significant emotional harm from witnessing her parents fight.

events and claimed Chloe was lying when she made statements to the contrary.

On appeal, father contends there was not substantial evidence supporting jurisdiction under subdivision (b) because the last incident of domestic violence between the parents was in 2022, and the parents are now separated. It is true that father told the Department in November 2023 that he and mother were separated and that he wanted to obtain a divorce. However, at the time of the jurisdictional hearing, there was no evidence that he had taken any steps to obtain that divorce. The evidence in the record indicates that on at least one prior occasion, mother had returned to visit father in Mexicali after taking Chloe to the United States. There was also evidence in the record indicating father continued to engage in verbal altercations with mother while they were separated, including threatening to take Chloe from mother and stating that he hopes mother dies.[5] This is substantial evidence from which the juvenile court could conclude that the current physical distance between the parents did not fully obviate the risk of harm that parents' altercations posed to Chloe.

---

[5] In his reply brief on appeal, father for the first time raises hearsay objections to this evidence. Father forfeited any claim of error in this regard by failing to raise this objection below or in his opening brief on appeal. (See *In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court"]; *American Indian Model Schools v. Oakland Unified School Dist.* (2014) 227 Cal.App.4th 258, 276 ["Fairness militates against allowing an appellant to raise an issue for the first time in a reply brief because consideration of the issue deprives the respondent of the opportunity to counter the appellant by raising opposing arguments about the new issue"].) Moreover, father himself reported that he continued to have contentious phone communications with mother, claiming that mother would call him late at night and be "disrespectful" toward him.

C.    *Section 300, subdivision (a)*

"When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence.  In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence."  (*In re Alexis E., supra*, 171 Cal.App.4th at p. 451.)  Because we conclude substantial evidence supports the court's jurisdictional finding under section 300, subdivision (b)(1), we need not reach the propriety of the jurisdictional finding under subdivision (a) and decline to do so.  (*Ibid.*)

II.    *Removal*

A.    *Legal Standards*

Section 361, subdivision (c)(1) provides the juvenile court may remove a child from the custody of a parent if it finds, by clear and convincing evidence, "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody."  The court must also determine "whether reasonable efforts were made to prevent or to eliminate the need for removal."  (§ 361, subd. (e).)

"It is not required that the parent be dangerous or that the child have been harmed before removal is appropriate.  [Citation.]  'The focus of the statute is on averting harm to the child.'"  (*In re D.D.* (2019) 32 Cal.App.5th

11

985, 996.) In determining whether a child may be safely maintained in the parent's physical custody, "the [juvenile] court may consider the parent's past conduct as well as present circumstances." (*In re Cole C.* (2009) 174 Cal.App.4th 900, 917.) The juvenile court must consider "'not only the parent's past conduct, but also current circumstances, and the parent's response to the conditions that gave rise to juvenile court intervention.'" (*In re M.V.* (2022) 78 Cal.App.5th 944, 967.) "The jurisdictional findings are prima facie evidence the minor cannot safely remain in the home." (*In re T.V., supra,* 217 Cal.App.4th at p. 135, citing § 361, subd. (c)(1).)

We affirm the removal order if it is supported by substantial evidence. (*In re V.L.* (2020) 54 Cal.App.5th 147, 154.) When conducting a substantial evidence review of a finding made under the clear and convincing evidence standard: "[A]n appellate court must account for the clear and convincing standard of proof when addressing a claim that the evidence does not support a finding made under this standard. When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable factfinder could have found it highly probable that the fact was true. In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011–1012.)

B.    *Analysis*

Father contends that substantial evidence does not support the juvenile court's decision to remove Chloe from his care.  Father's arguments on this point largely mirror the arguments discussed above regarding the juvenile court's jurisdictional findings.  The same evidence supporting the juvenile court's jurisdictional finding on count b-3 is also clear and convincing evidence that Chloe would face a risk of harm if placed with father.  Additionally, the juvenile court could properly consider Chloe's stated preference not to live with father.  (See *In re A.C.* (2020) 54 Cal.App.5th 38, 43 [child's preferences are relevant but not dispositive in determining whether to place child with noncustodial parent].)

Father also argues there were reasonable means to protect Chloe's health if she were placed with him, pointing to the fact that he lived with his mother and his sisters resided nearby.  This argument was not raised during the disposition hearing, and there is no evidence in the record suggesting that the presence of relatives would mitigate the risk to Chloe.  As the Department notes, the presence of these paternal relatives did not protect Chloe from her parents' domestic violence while the family was previously living together in Mexicali near these relatives.  On such facts, the juvenile court had a reasonable basis to conclude that the presence of father's relatives would not protect Chloe if she were returned to Mexicali to live with her father.

//

//

//

13

## DISPOSITION

The juvenile court's jurisdictional findings and dispositional orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, Acting P. J.

WE CONCUR:


MORI, J.


DAUM, J.*

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article IV, section 6 of the California Constitution.

14